Joseph **RODONICH**, Alex **Chotowicky,** **Wasyl Lawro, and Harry** **Diduck, Plaintiffs,**

v.

**HOUSE WRECKERS UNION LOCAL 95 OF LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, et al., Defendants.**

**No. 82 Civ. 5583 (JMC).**

United States District Court, S.D. New York.

Sept. 20, 1985.

Hall & Sloan, New York City (Burton Hall, Wendy Sloan, of counsel) for plaintiffs.

Sipser, Weinstock, Harper & Dorn, New York City (Richard Dorn, of counsel) for defendant Local 95 and the individual defendants.

Connerton, Bernstein & Katz, Washington, D.C. (Orrin Baird, Theodore T. Green, of counsel) for defendant Laborers' Intern. Union of North America.

Schulman & Altman, New York City (James Altman, of counsel) for defendant Laborers' Intern. Union of North America.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Defendants' motions for summary judgment and to dismiss for failure to state a claim are granted in part and denied in part. Fed.R.Civ.P. 12(b)(6); 56(b).

Plaintiffs' cross motion for partial summary judgment is denied. Fed.R.Civ.P. 56(a).

Plaintiffs' motion to supplement and amend the complaint is granted. Fed.R. Civ.P. 15(a), (d).

## FACTS

Plaintiffs commenced this action against the Laborers' International Union of North America ["LIUNA"], Local 95 of LIUNA, and individual defendants alleging violations of the Labor Management Reporting and Disclosure Act ["LMRDA"], 29 U.S.C. §§ 411(a)(1), (2), (5), 529, 530, the Labor Management Relations Act ["LMRA"], 29 U.S.C. § 185(a), the Racketeer Influence and Corrupt Organizations Act ["RICO"], 18 U.S.C. § 1962, and common law breach of contract. The complaint in essence alleges, among other things, that defendants engaged in a scheme to repress dissent within the union and unlawfully disciplined plaintiffs. Defendants move for summary judgment, claiming that plaintiffs' actions under the LMRA and LMRDA are barred by the statute of limitations. Defendants also move to dismiss plaintiffs' LMRA, RICO and common law breach of contract claims for failure to state a cause of action and LIUNA moves alternatively for sum-

mary judgment. LIUNA moves for summary judgment with respect to the claims under the LMRDA and moves to dismiss the claims under sections 101(a)(5) and 609 of the LMRDA, 29 U.S.C. §§ 411(a)(5), 529, as failing to state a cause of action. Plaintiffs cross move for partial summary judgment on the LMRA and state law contract claims. Plaintiffs also move to supplement and amend the complaint.

## DISCUSSION

### I. Statute of Limitations

Defendants, relying on *Del Costello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), contend that plaintiffs' claims under Title I of the LMRDA, 29 U.S.C. § 411 *et seq.* ["Title I"], and Section 301 of the LMRA, 29 U.S.C. § 185(a) ["Section 301"], are barred by the six-month statute of limitations of Section 10(b) ["Section 10(b)"] of the National Labor Relations Act ["NLRA"], 29 U.S.C. § 160(b). Plaintiffs claim that state law statutes of limitations should apply. All parties agree that, if the state statutes apply, plaintiffs' claims are timely.

The Court, therefore, must determine whether the case is controlled by *Del Costello*, which applied Section 10(b)'s statute of limitations, governing unfair labor practices, to Section 301/fair representation "hybrid" suits. 462 U.S. at 169, 103 S.Ct. at 2293. In *Del Costello*, the Court declined to borrow state law statutes because only imprecise state law analogies to these hybrid suits exist. The Court first noted that section 10(b) provides an appropriate limitations period because Section 301/fair representation claims often involve conduct that amounts to an unfair labor practice. *Id.* at 170, 103 S.Ct. at 2293. More important to the Court's analysis was its determination that the six-month statute strikes a proper balance "between the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective bargaining system." *Id.* at 171,

103 S.Ct. at 2294, (quoting *United Parcel Serv. v. Mitchell*, 451 U.S. 56, 70, 101 S.Ct. 1559, 1567, 67 L.Ed.2d 732 (1981) (Stewart, J., concurring)).

The Court cautioned however that its holding:

should not be taken as a departure from prior practice in borrowing limitations periods for federal causes of action, in labor law or elsewhere. We do not mean to suggest that federal courts should eschew use of state limitations periods anytime state law fails to provide a perfect analogy. See *e.g., Mitchell*, 451 U.S., at 61, n. 3 [1563 n. 3]. On the contrary, as the courts have often discovered, there is not always an obvious state-law choice for application to a given federal cause of action; yet resort to state law remains the norm for borrowing of limitations periods. Nevertheless, when a rule from elsewhere in federal law clearly provides a closer analogy than available statutes, and when the federal policies at stake and the practicalities of litigation make that rule significantly more appropriate vehicle for interstitial lawmaking, we have not hesitated to turn away from state law.

*Del Costello*, 462 U.S. at 171–72, 103 S.Ct. at 2294.

In the instant case, this Court must consider *Del Costello*'s cautionary language carefully. Turning first to plaintiffs' LMRDA claims, it appears that there is no precise state law analogy. Plaintiff urges that Title I of the LMRDA, which delineates the rights of union members with respect to the union, closely resembles a federal civil rights statute and was intended as a bill of rights for union members. *See United Steelworkers v. Sadlowski*, 457 U.S. 102, 109–12, 102 S.Ct. 2339, 2344–46, 72 L.Ed.2d 707 (1982). Accordingly, plaintiffs argue that the state statute of limitations applicable in federal civil rights actions should control the current litigation.

Although the Court agrees that Title I bears a resemblance to civil rights statutes,

this purported analogue must be analyzed in accordance with the framework established in *Del Costello*. First, Title I violations, like Section 301/fair representation claims, have an unfair labor practice nexus. *See Local Union 1397 v. United Steelworkers,* 748 F.2d 180, 183 (3d Cir.1984); *McConnell v. Chauffeurs, Teamsters and Helpers Local 445,* 606 F.Supp. 460, 463 (S.D.N.Y.1985).

As *Del Costello* instructs, the relevant interests must also be balanced. *See id.* 462 U.S. at 171, 103 S.Ct. at 2293. *Monarch Long Beach Corp. v. Soft Drink Workers,* 762 F.2d 228, 231 (2d Cir.1985). It is important that a limitations period provide an aggrieved union member with a satisfactory opportunity to vindicate his LMRDA rights. In *Del Costello* the Court rejected a 90-day state law statute as too short a time for an employee to act on his Section 301 rights. *See* 462 U.S. at 166, 103 S.Ct. at 2291. Nonetheless, the Court chose the six-month period because of the countervailing interest in promoting "stable bargaining relationships." *Id.* at 171, 103 S.Ct. at 2294. LMRDA claims, however, do not implicate the collective bargaining process in the same way as Section 301/fair representation claims. Indeed, Section 301/fair representation suits represent a direct challenge to the grievance/arbitration mechanism in the collective bargaining agreement. *Id.* at 165, 103 S.Ct. at 2291.

In *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), by contrast, the Court recognized that a direct action under the collective bargaining agreement brought by a union against the employer does not involve "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it." *Id.* at 702, 86 S.Ct. at 1111, quoted in *Del Costello,* 462 U.S. at 163, 103 S.Ct. at 2290. Accordingly, the Court applied the six-year state statute of limitations governing contracts. Similarly, in the present case, the internal union nature of LMRDA complaints impact only tangentially on the collective bargaining concerns expressed in *Del Costello. Cf. Monarch Long Beach Corp.,* 762 F.2d at 231. Although the rapid resolution of labor disputes serves an important national policy, its urgency is not so great when the result of applying the six-month statute might be to thwart the Congressional purpose in enacting the LMRDA, which was to provide union members with a "bill of rights." *United Steelworkers,* 457 U.S. at 109, 102 S.Ct. at 2344. *Del Costello*'s six-month statute is not to serve as a talisman.[1] *Del Costello,* 462 U.S. at 171, 103 S.Ct. at 2294; *see, e.g., Monarch Long Beach Corp. v. Soft Drink Workers,* 762 F.2d 228 (2d Cir.1985); *O'Hare v. General Marine Transport Corp.,* 740 F.2d 160 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985). The Court finds that the state three-year statute of limitations applicable in federal civil rights actions [2] most appropriately strikes

1. Four circuits have recently concluded that § 10(b)'s six-month statute applies to causes of action under Title I of the LMRDA. *See Davis v. United Automobile Workers,* 765 F.2d 1510 (11th Cir.1985); *Adkins v. Electrical Workers,* 119 L.R.R.M. 3594 (6th Cir.1985); *Vallone v. Local No. 75, International Brotherhood of Teamsters,* 755 F.2d 520 (7th Cir.1984); *Local Union 1397 v. United Steelworkers,* 748 F.2d 180 (3rd Cir.1984). However, these courts considered only briefly the link between violations of the LMRDA and the collective bargaining process. *See e.g., Vallone,* 755 F.2d at 521–22 ("interests balanced by Congress in establishing the statute of limitations in Section 10(b) are the same interests at issue in this case"); *Local 1397,* 748 F.2d at 184 ("dissension within a un-

ion naturally affects that union's activities and effectiveness in the collective bargaining arena"). Moreover, the Second Circuit has made it clear that *Del Costello* "should be narrowly construed." *Monarch Long Beach Corp. v. Soft Drink Workers,* 762 F.2d 228, 231 (2d Cir.1985).

2. The Second Circuit has traditionally held that federal civil rights actions in New York are limited by the three year statute of limitations of N.Y. C.P.L.R. § 214(2) (McKinney's 1972). *See Keating v. Carey,* 706 F.2d 377, 382 (2d Cir.1983); *Pauk v. Board of Trustees of City Univ.,* 654 F.2d 856, 861–62 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). However, in *Wilson v. Garcia,* —— U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985),

the balance established in *Del Costello* because that statute recognizes the need for a reasonable time period within which to vindicate rights similar to those created in Title I. *See Bernard v. Delivery Drivers,* 587 F.Supp. 524, 525 (D.Colo.1984); *Berard v. General Motors Corp.,* 493 F.Supp. 1035, 1043 (D.Mass, 1980). Accordingly, plaintiffs' Title I claims are not time barred.[3]

■ The Court must now consider defendants' contention that the claims under Section 301 are barred by *Del Costello*'s six-month statute of limitations. The Supreme Court has established that the union constitution is a contract under federal law. *See United Association of Plumbers and Pipefitters,* 452 U.S. at 621, 101 S.Ct. at 2550. Accordingly, the statute of limitations issue is controlled by *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), which held that in straightforward suits under Section 301 for breach of the collective bargaining agreement, the state contract limitations period applies. *Id.* at 707, 86 S.Ct. at 1114. Therefore, the state contract statute must apply in straight-forward suits under Section 301 for breach of a union constitution. *Cf. O'Hare v. General Marine Transport Corp.,* 740 F.2d 160, 167 (2d Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1181, 84 L.Ed.2d 329 (1985).

Defendants suggest that *Del Costello*'s treatment of Section 301/fair representation claims militates against this conclusion. However, unlike those claims, suits brought under the union constitution alone

do not compromise the grievance/arbitration procedures in the collective bargaining agreement and therefore impact much less upon labor management relations.[4] *See Hoosier,* 383 U.S. at 702, 86 S.Ct. at 1111. Accordingly, plaintiffs' claims under Section 301 are governed by the six-year contract statute of limitations and are thus timely.

## II. Claims Under Section 301 of the LMRA

■ The Court turns now to defendants' assertion that a union member has no cause of action against its union under Section 301 for breach of the union constitution. In a prior decision in this action this Court held that a counterclaim under Section 301 by defendants, including the individual defendants, stated a claim for relief for breach of both the LIUNA and local constitutions. *See* Memorandum and Order at 11, 82 Civ. 5583 (JMC) (S.D.N.Y. Apr. 15, 1983) ["April Memorandum and Order"]; *see also Kinney v. International Brotherhood of Electrical Workers,* 669 F.2d 1222, 1229 (9th Cir.1982). The Court sees no reason to disturb its previous holding. Accordingly, plaintiffs state a cause of action under Section 301, at least with respect to Local 95.

■ Plaintiffs point to no specific provision in the LIUNA constitution, however, to support a Section 301 claim against LIUNA. Plaintiffs seem to argue that there is a breach of a duty, inferred from the LIUNA constitution, that LIUNA decide all appeals fairly. Plaintiffs, in effect, urge

---

the Supreme Court held that the State statute of limitations in personal injury actions applies. In New York this is the three-year statute of C.P.L.R. § 214(5).

3. In light of the Court's disposition of the statute of limitations question, it is unnecessary to decide defendants' contentions regarding exhaustion of remedies and borrowing Section 10(b)'s service requirement.

4. Local 95 maintains that *Erkins v. United Steelworkers,* 723 F.2d 837 (11th Cir.1984), supports application of *Del Costello*'s six-month statute to Section 301 suits brought under the union constitution. In *Erkins,* the court initially determined that unfair representation actions, brought alone and not as part of a hybrid claim, are governed by the six-month statute. *Id.* at 839. It then had to decide whether to infer a distinct duty of fair representation from the union constitution. The Court declined to do so, stating that such would create an anomaly: The duty arising under the constitution would have a six-year statute while the duty implied in law only six months. *Id.* at 840. Contrary to what Local 95 contends, therefore, *Erkins* acknowledges that the state law contract statute of limitations would apply to actions based on the union constitution.

this Court to sit as a superreview board of LIUNA's appellate processes. In light of the strong national labor policy against unnecessary intervention into internal union affairs, *see Calhoon v. Harvey,* 379 U.S. 134, 140, 85 S.Ct. 292, 296, 13 L.Ed.2d 190 (1964), the Court declines to set such a precedent. Accordingly, plaintiffs' cause of action against LIUNA under Section 301 is dismissed.

The individual defendants seek to strike plaintiffs' Section 301 action as against them, arguing that Section 301 does not permit a damage claim against union members or officers. The Court previously ruled that defendants' counterclaim under Section 301 for damages against plaintiffs was valid. *See* April Memorandum and Order at 11. Accordingly, the Court declines to strike the Section 301 claim against the individual defendants.

### III. *Preemption of State Law Contract Claim*

■ The next issue is whether plaintiffs' state law claim for breach of contract under the union constitution is preempted by federal law. It has long been established that state courts have concurrent jurisdiction with the federal courts to hear claims for breach of the collective bargaining agreement. However, state courts must apply federal law. *See Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Charles Dowd Box Company v. Courtney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). In *United Association of Plumbers and Pipefitters v. Local 334,* 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), the Supreme Court also established that federal courts have Section 301 jurisdiction over actions for breach of a union constitution, *id.* at 626–27, 101 S.Ct. at 2552–53, and that federal law is to govern suits under § 301, *id.* at 627, 101 S.Ct. at 2553. Because this decision evinces the Supreme Court's intention to treat such suits in much the same way as those for breach of the collective bargaining agreement, the inference is that federal law would govern actions for breach of a union constitution in a state court. *See also Allis-Chalmers Corp. v. Lueck,* —— U.S. ——, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). Plaintiffs contend that, in view of strong Congressional intent that the LMRDA not preempt state law remedies, it would be an egregious error to hold that the common law contract claim is preempted. However, it does not necessarily follow that Congress, by enacting one statute with the expressed intent that it not preempt state law, has not by other legislation carved out an area of state law which it intends to preempt. Indeed, the Supreme Court has found such an area in Section 301. Accordingly, this Court holds that a state tribunal must apply federal law to a claim under a union constitution. Consequently, plaintiffs' state law contract claim is preempted and is dismissed.

### IV. *Plaintiffs' LMRDA Claims*

Defendant LIUNA next contends that plaintiffs Joseph Rodonich, Alex Chotowicky and Wassyl Lawro have failed to state a cause of action under Section 101(a)(5) or 609 of LMRDA and further contends that, as a matter of law and undisputed fact, it has not violated LMRDA Sections 101(a)(1), 101(a)(2) or 610.

■ In order for plaintiffs to succeed on these claims, they must show either that Local 95 was an agent of LIUNA, *see Boss v. International Brotherhood of Boilermakers,* 567 F.Supp. 845, 848 (N.D.N.Y.), *aff'd mem.,* 742 F.2d 1446 (1983), or that LIUNA "instigated, supported, ratified or encouraged" Local 95's alleged unlawful conduct. *See id.;* Memorandum and Order at 2, 82 Civ. 5583 (S.D.N.Y. Mar. 10, 1983) ["March Memorandum and Order"]; *see also Carbon Fuel Co. v. United Mine Workers,* 444 U.S. 212, 218, 100 S.Ct. 410, 414, 62 L.Ed.2d 394 (1979).

■ Plaintiffs attempt to establish an agency relationship between LIUNA and its local by pointing to various provisions in the LIUNA and local constitutions. The Court finds, however, that these provisions do not suffice. "A local union may remain autonomous and independent notwithstand-

ing the fact that the International retains a degree of supervisory authority." *Boss,* 567 F.Supp. at 847. Although the LIUNA and local constitutions permit LIUNA to suspend a local's charter, an agency relation does not arise as long as the local retains some power. *Id.* (citing *Morgan Drive Away, Inc. v. Teamsters Union,* 166 F.Supp. 885 (S.D.Ind.1958), *aff'd,* 268 F.2d 871 (7th Cir.1958), *cert. denied,* 361 U.S. 896, 80 S.Ct. 199, 4 L.Ed.2d 152 (1959)). Consequently, plaintiffs' theory fails.

■ In the absence of an agency relationship, plaintiff must establish that LIUNA "instigated, supported, ratified, or encouraged" Local 95's allegedly unlawful conduct. *Carbon Fuel,* 444 U.S. at 218, 100 S.Ct. at 414; *Boss,* 567 F.Supp. at 848; March Memorandum and Order at 2. LIUNA maintains that mere affirmance of Local 95's disciplinary action is not sufficient under this standard. Although the Court agrees that mere affirmance may not create liability,[5] common law agency principles apply. *Aguirre v. Automotive Teamsters,* 633 F.2d 168, 172 (9th Cir.1980); *see Carbon Fuel,* 444 U.S. at 217, 100 S.Ct. at 414; *NLRB v. Local Union 46, Metallic Lathers,* 727 F.2d 234 (2d Cir.1984). An affirmance may, therefore, amount to a ratification if done with full knowledge of all material facts. *See Breen Air Freight, Ltd. v. Air Cargo, Inc.,* 470 F.2d 767, 773 (2d Cir.1972) (common law ratification); *see also Petramale v. Local No. 17, LIUNA,* 736 F.2d 13, 18 (2d Cir.1984).

■ Plaintiffs' claims under Sections 101(a)(1) and 101(a)(2) allege the unlawful

discharge of Union officers. Therefore, plaintiffs must also prove with respect to these claims that the discharges were "part of a purposeful and deliberate attempt ... to suppress dissent within the union," *Schonfeld v. Penza,* 477 F.2d 899, 904 (2d Cir.1973); *see Finnegan v. Leu,* 456 U.S. 431, 441, 102 S.Ct. 1867, 1873, 72 L.Ed.2d 239 (1982); *Cotter v. Owens,* 753 F.2d 223, 230 (2d Cir.1985), and that LIUNA acted with full knowledge of this scheme or actively participated in it.

The Court finds that there is a sufficient question of material fact surrounding the issue of LIUNA's knowledge and therefore denies LIUNA's motion for summary judgment on plaintiffs' LMRDA claims.

■ LIUNA also argues that plaintiffs Rodonich, Chotowicky, and Lawro have failed to state a cause of action under Sections 101(a)(5) and 609, because the discipline affected only their status as union officers. In *Finnegan v. Leu,* 456 U.S. 431, 102 S.Ct. 1867, 72 L.Ed.2d 239 (1982), the Court held that these sections, which require due process before discipline may be imposed on union members, protect only membership rights and not a member's status as union employee. Accordingly, plaintiffs cannot prevail unless they show that membership rights were infringed as a consequence of LIUNA's affirmance, *see Schonfeld,* 477 F.2d at 904, and that LIUNA reasonably contemplated this result. *See Sands v. Abelli,* 290 F.Supp. 677, 683 (S.D.N.Y.1968). The Court finds that there are sufficient factual issues on this question to be resolved at trial.

---

**5.** In *International Brotherhood of Electrical Workers v. NLRB,* 487 F.2d 1113 (D.C.Cir.1972), the Court found that, although the National Labor Relations Board properly held the International union accountable for the discipline it had affirmed, the Board had no authority to impose monetary liability upon the International for fines that had been collected by the local. *Id.* at 1128. The Court then in dictum extended its holdings as follows:

Where the *only action* taken by a national or international union is in the nature of an appellate review of the action of a local union, and the national or international union exercises its appellate function *in good faith*

*and in the absence of fraud,* the national or international union should not be held answerable *in damages* to a member who was wrongfully disciplined by the local union. *See* Annotation, 74 A.L.R.2d 783, 800 (1960); *Schouten v. Alpine,* 215 N.Y. 225, 109 N.E. 244, 246 (1915). *See also Madden v. Atkins,* 4 N.Y.2d 283, 174 N.Y.S.2d 633, 151 N.E.2d 73 (1958). Since there is no claim that the International Union in the instant case did not exercise its review function in good faith and in the absence of fraud, we believe that the Labor Board improperly imposed monetary liability upon it.

*Id.* at 1129.

## V. *Plaintiff's Cross Motion for Summary Judgment*

Plaintiff, in a rather unorthodox fashion, moves for partial summary judgment on its claims under Section 301 of the LMRA and for breach of common law contract. The latter claim has been dismissed. With respect to the Section 301 claim, the Court finds there to be sufficient issues of fact to be resolved at trial.

## VI. *The RICO Claim*

Plaintiffs move to supplement and amend their RICO claims in the complaint. Normally, leave to amend is to be freely given. Fed.R.Civ.P. 15(a). When leave is requested on the eve of trial, however, the Court must consider reasons for the delay as well as possible prejudice to the defendant. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

In light of the Supreme Court's recent decision in *Sedima, S.P.R.L. v. Imrex Co.*, — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), adequate reasons for the delay exist. Moreover, because the original complaint stated a cause of action for RICO, defendants cannot claim surprise. It should be noted that much of the proposed amendment merely incorporates other allegations of the original complaint into the RICO claim, thereby minimizing prejudice. Accordingly, plaintiffs' motion to supplement and amend the complaint is granted. The Court also finds that, under the liberal pleading requirements, it states a cause of action. Defendants' motions to dismiss for failure to state a cause of action are denied without prejudice to renewal at trial.

### CONCLUSION

Defendants' motions to dismiss the claims under the LMRA and LMRDA as barred by the statute of limitations are denied. Defendants' motions to dismiss the common law contract claim are granted. Defendants' motions to dismiss the claim under the RICO Act are denied. LIUNA is granted summary judgment with respect to plaintiffs' LMRA claim under the union constitution. LIUNA's motion to dismiss the LMRDA claims is denied. Local 95 and individual defendants' motion to dismiss the LMRA claims is denied. Fed. R.Civ.P. 12(b)(6); 56(b).

Plaintiffs' cross motion for partial summary judgment is denied. Fed.R.Civ.P. 56(a).

Plaintiffs' motion to supplement and amend the complaint is granted. Fed.R. Civ.P. 15(a), (d).

SO ORDERED.